UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| TARONTAE JACKSON,<br><br>Plaintiff,<br>v.<br>STOLK, *et al.*,<br>Defendants. | Case No. 3:23-cv-00247-MMD-CSD<br><br>ORDER |

**I.    SUMMARY**

*Pro se* Plaintiff Tarontae Jackson, who is an inmate in the custody of the Nevada Department of Corrections ("NDOC"), brings this civil rights action under 42 U.S.C. § 1983, arising from events that took place while Jackson was housed at Ely State Prison ("ESP"). Before the Court is United States Magistrate Judge Craig S. Denney's Report and Recommendation (ECF No. 58 ("R&R")), recommending that the Court grant Defendants' motion for summary judgment (ECF No. 53 ("Motion"))[1] on Defendants' argument that Jackson failed to exhaust his available administrative remedies.[2] Because the Court finds that Defendants have not met their burden to demonstrate the absence of genuine issues of material fact and for the reasons discussed below, the Court rejects the R&R's recommendation to grant summary judgment on Defendants' exhaustion argument. The Court considers Defendants' other arguments and finds genuine issues of material fact exist to preclude summary judgment and denies the Motion.

---

[1]Jackson responded to Defendants' Motion (ECF No. 56 ("Response")) and Defendants replied (ECF No. 57 ("Reply")). Jackson filed a motion to extend time to file an objection to the R&R (ECF No. 59), which the Court granted (ECF No. 60). Jackson then timely filed an objection (ECF No. 61) to the R&R and Defendants responded (ECF No. 62).

[2]Because the Magistrate Judge recommended granting summary judgment on this ground, he did not address Defendants' other arguments.

## II. RELEVANT BACKGROUND

### A. Jackson's Allegations

The Court previously screened Plaintiff's First Amended Complaint ("Complaint") and permitted Plaintiff to proceed on an Eighth Amendment claim for excessive use of force against Defendants Stolk, Brown, Jacobs, Davis and Kirkland. (ECF No. 7.) The Court reiterates the following facts taken from the Court's screening order and adapted from the Complaint. (*Id.* at 3-4.)

On December 15, 2022, Jackson was sent to ESP because he had been charged with a work stoppage and battery and placed on "HRP." (ECF No. 6 at 3.) Early the next morning, he asked Sergeant Stolk for his personal property, and said that it had been over 72 hours since he last showered. (*Id.*) Stolk made a "smart remark," and Jackson responded by calling him a bitch. (*Id.*) Stolk and Corrections Officer Brown approached Jackson's door and said they were "gonna have fun beating [his] ass." (*Id.*)

On December 19 or 20, 2022, during Jackson's HRP hearing, the warden stated that Jackson had been grabbing corrections officers and holding the food flap on his cell's door, and ordered officers to get Jackson out of his face. (*Id.*) Later in the sally port, Stolk said that if Jackson grabbed officers and held the food flap at ESP, then officers would "beat [Jackson's] ass." (*Id.*) Jackson laughed and asked for his property. (*Id.*) Stolk said that it would be a while considering he liked to assault staff. (*Id.*)

On December 21, 2022, Stolk did not give Jackson his breakfast tray, claiming that Jackson had "propelled on him[.]" But the cell's design prevented Jackson from being able to throw anything outside it. (*Id.*) Jackson suspects that Stolk made up the incident to justify entering Jackson's cell with other officers to beat him up. (*Id.*) Later that same day, corrections officers came to Jackson's cell door and ordered him to cuff up. (*Id.* at 4.) Jackson refused because officers had previously cuffed him too tightly. (*Id.*) Jackson went to lie down on his bed with his hands behind his back. (*Id.*)

Corrections Officer Kirkland then entered Jackson's cell and tased him in the back. (*Id.*) Corrections Officer Brown and Sergeant Davis then hit Jackson in both of his eyes

and temple "for no reason." (*Id.*) Stolk and Corrections Officer Jacobs were present but did not stop the other officers. (*Id.*) Jackson has been given at least three extra doses of his depression medication Prozac to help him cope with this experience. (*Id.*) He was allowed to see the nurse later[3], who gave him ice packs with instructions to put them over his eyes. (*Id.* at 3.) Jackson has lost sleep and fears for his life because of this incident. (*Id.*)

### B.     Grievance and Exhaustion

Jackson's disciplinary record shows that on December 21, 2022, he propelled a substance at an officer while morning breakfast was being administered.[4] (ECF No. 53 at 4.) Pursuant to NDOC policy, Jackson was extracted from his cell later that day so that his cell could be searched. (*Id.* at 3-4.) Jackson sustained facial bruising and a hematoma. (ECF No. 53-9.) The next day, December 22, 2022, Jackson filed an informal level grievance, and he filed a first level grievance on March 29, 2023, because he had not received a response to his informal level grievance. (ECF No. 53 at 18.)

### C.     R&R

In his R&R, Judge Denney recommends granting Defendants' Motion because Jackson did not exhaust his available administrative remedies. Jackson's informal level grievance was partially granted on December 27, 2022, and submitted to the Inspector General's (IG) office for further investigation under the case number IN-2023-0049. (ECF No. 58 at 5-6.) On January 4, 2023, a use of force incident review was conducted and concluded, finding that the use of force was justified, authorized, necessary and limited. (*Id.* at 6.) However, the results of this investigation were not conveyed to Jackson, so Jackson initiated a first level grievance on March 29, 2023. (*Id.*) In response to this first

---

[3]The Screening Order erroneously states that Jackson saw the nurse three days later, based on an error in interpreting Jackson's handwriting. (ECF Nos. 6 at 3; 7 at 7). The Court notes that Jackson received medical attention on the same day he was extracted. (ECF Nos. 53 at 6; 53-9).

[4]As discussed below, Jackson disputes that he did so and contends Defendant manufactured a reason to conduct the cell extraction to inflict harm on him as they had threatened.

level grievance, Jackson received an improper grievance memorandum from Tasheena Cooke that rejected Jackson's first level grievance as untimely and noted that his case had been referred to the IG's office. This memorandum instructed Jackson he could not proceed to the next level. (*Id.*)

Judge Denney found that on May 9, 2023, Jackson received another first level grievance denial advising him that his allegation of excessive force was unsubstantiated and denied. (*Id.*) Because Jackson did not appeal this subsequent denial to the next grievance level, Judge Denney found that Jackson did not exhaust his administrative remedies. (*Id*. at 7.) Judge Denney thus recommended granting Defendants' Motion on the ground of exhaustion and did not address Defendants' remaining arguments as to qualified immunity and reasonable use of force. (*Id.* at 7-8.)

### III.  DISCUSSION

The Court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). Where, as here, a party timely objects to a magistrate judge's Report and Recommendation, the Court is required to "make a de novo determination of those portions of the [report and recommendation] to which objection is made." *Id.* The Court's review is thus de novo because Jackson filed his Objection. The Court will first address Defendants' exhaustion argument and rejects Judge Denney's recommendation to grant summary judgment. The Court will then address Defendants' arguments as to the merits of Plaintiff's claim and as to qualified immunity.

#### A.  Exhaustion

Defendants argue in their Motion that Jackson failed to exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"). (ECF No. 53 at 17-18.) Defendants claim that Jackson filed one grievance in grievance no. 2006-31-46909 ("grievance no. 909"). (ECF No. 53 at 18.) He filed an informal level grievance on December 22, 2022, the day after he was extracted from his cell. On March 29, 2023, Jackson filed a first level grievance because he had not received a response to his

informal grievance. (*Id.*) NDOC rejected Jackson's first level grievance on May 9, 2023, and there is no record that Jackson appealed the grievance to the second level nor that Jackson was prevented from appealing his grievance, thus he did not exhaust his administrative remedies. (*Id.*)

Jackson argues in his Response that further administrative remedies were unavailable to him because he received an improper grievance memorandum from Cooke that marked his first level grievance as untimely and prevented him from appealing his grievance to the next level. (ECF No. 56 at 6.) Citing to the record, Defendants counter in their Reply that on April 25, 2023, Jackson's first level grievance was rejected but the form informed him that "*he may refile his first level grievance at the same level after correcting the deficiencies in his grievance.*" (ECF No. 57 at 5 (emphasis in original).)

Under the PLRA, "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The failure to exhaust administrative remedies is "'an affirmative defense the defendant must plead and prove.'" *Albino v. Baca*, 747 F.3d 1162, 1166 (9th Cir. 2014) (quoting *Jones v. Bock*, 549 U.S. 199, 204, 216 (2007)). To exhaust administrative remedies within the NDOC, inmates must follow the procedures outlined in Administrative Regulation (AR) 740, and they must complete three levels of a grievance: informal, first, and second. (ECF No. 53-10.)

However, "[p]risoners need only exhaust 'available' administrative remedies; remedies are not considered 'available' if, for example, prison officials do not provide the required forms to the prisoner." *Draper v. Rosario*, 836 F.3d 1072 (9th Cir. 2016); *see also Albino*, 747 F.3d at 1172-73. "[A]n administrative remedy is not available if 'prison officials inform the prisoner that he cannot file a grievance.'" *Williams v. Paramo*, 775 F.3d 1182, 1192 (9th Cir. 2015) (citing *Brown v. Valoff*, 422 F.3d 926, 937 (9th Cir. 2005)). Information provided to the prisoner may inform a court's determination of whether relief was available. *See Brown*, 422 F.3d at 937.

As a preliminary matter, the Court notes that it may consider portions of Jackson's sworn *pro se* Complaint as competent summary judgment evidence in this action. *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004) (finding that a *pro se* litigant may present motions and pleadings as summary judgment evidence to the extent the contents of those documents are based on personal knowledge, set forth facts that would be admissible into evidence, and the litigant attested under penalty of perjury that they were true and correct). Moreover, the Ninth Circuit liberally construes the filings and motions of pro se inmates in a civil suit.[5] *See Thomas v. Ponder*, 611 F.3d 1144, 1150 (9th Cir. 2010) ("We have. . . held consistently that courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly.").

Turning to the record, the Court finds that Defendants fail to meet their burden of proving their affirmative defense that there was an available remedy that Jackson failed to exhaust. The parties do not dispute that Jackson did not file a second level grievance, but they dispute the reason for that failure. Defendants acknowledge that Jackson's first level grievance was rejected twice. (ECF Nos. 53 at 18; 57 at 5-6.) According to Defendants, citing to ECF No. 53-11 at 32, Jackson was informed that he could refile his first grievance after remedying deficiencies. (ECF No. 57 at 5.) However, Defendants appear to be citing to a different grievance in Jackson's record, not grievance no. 909. Defendants' argument that further remedy was available in an unrelated appeal is a "virtual non-sequitur" because it does not rebut Jackson's claim that further remedy was unavailable. *See Williams*, 775 F.3d at 1192.

In contrast, Jackson claims that he was unable to file a second level grievance because he was informed that he could not, and that he had no other option but to file his complaint before the Court. (ECF No. 56 at 6.) The undisputed records show that Jackson

---

[5]Under this requirement to liberally construe Jackson's pleadings, the Court considers some of the general factual allegations pled in the Complaint (ECF No. 6) in support of Jackson's First Amendment claim, which was dismissed at the screening stage (ECF No. 7).

received an improper grievance memorandum from Cooke that instructed Jackson that his grievance was not accepted as untimely, and the form stated that "the grievance may NOT proceed to the next level." (ECF No. 53-12 at 33 (emphasis in original).) Accordingly, the court finds that Jackson had no remaining available administrative remedies based on this response from Cooke. *See Williams*, 775 F.3d at 1192; *Albino*, 747 F.3d at 1170 ("If a motion for summary judgment is denied, disputed factual questions relevant to exhaustion should be decided by the judge.").

Viewing the facts in the light most favorable to Plaintiff[6], a rational trier of fact could find that Defendants failed to prove the affirmative defense of non-exhaustion. *See Albino*, 747 F.3d at 1166, 1176 (noting defendants' initial burden to prove the affirmative defense). The Court therefore rejects Judge Denney's R&R and denies Defendants' Motion as to administrative exhaustion. The Court turns to Defendants' remaining arguments below.

### B.    Eighth Amendment—Excessive Force

Defendants argue in their Motion that they used reasonable force when extracting Jackson from his cell therefore they did not violate Jackson's Eighth Amendment rights. (ECF No. 53 at 15.) Citing to the *Kingsley* factors, Defendants argue that the force used in Jackson's cell extraction crossed no constitutional line. (*Id.* at 10-15.) Defendants argue that force was proportional because they were required to extract Jackson from his cell per NDOC policy and Jackson refused officers' orders to voluntarily submit to restraints by laying on his bunk with his hands under his stomach, initially did not give up his hands, and that officers reported that he "was putting up a struggle and resisting." (*Id.* at 10-12.) Defendants additionally insist that Jackson sustained no serious injuries (*id.* at 13), and that all use of force was applied in a good-faith effort to extract Jackson from his cell (*id.* at 15).

---

[6]In evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp. v. Fishbach & Moore, Inc.*, 793 F.2d 1100, 1103 (9th Cir. 1986).

Jackson disputes Defendants' allegations. Jackson alleges that Stolk falsely claimed that Jackson had propelled on him on December 21, 2022, to create a reason to enter his cell and beat him up. (ECF No. 6 at 3.) He claims that he did not propel any substance from his cell, nor could he have, because of the design of his cell and because there was a red box placed over his food flap. (*Id.*) Jackson admits that when officers came to his cell and demanded that he submit to restraints, Jackson refused because on prior occasions he had suffered from excessive force while in restraints. (*Id.* at 4.) He alleges that he laid down on his bunk with his hands on his back. While he was laying down with his hands behind his back, Defendants tased him, hit him in both eyes, and hit him repeatedly in the temple. (*Id.*) Jackson alleges that this occurred "for no reason." (ECF No. 56 at 2.)

The Eighth Amendment prohibits the imposition of cruel and unusual punishments and "embodies broad and idealistic concepts of dignity, civilized standards, humanity and decency." *Estelle v. Gamble*, 429 U.S. 97, 102 (1976) (citation and internal quotation marks omitted). When a prison official is accused of using excessive physical force in violation of the cruel and unusual punishment clause of the Eighth Amendment, the question turns on "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically for the purpose of causing harm." *See Hudson v. McMillian*, 503 U.S. 1, 6 (1992) (citing *Whitley v. Albers*, 475 U.S. 312, 320-21 (1986)). A prison official violates the Eighth Amendment only when two requirements are met: (1) the objective requirement that the deprivation is "sufficiently serious," and (2) the subjective requirement that the prison official has a "sufficiently culpable state of mind." *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

The objective requirement in an excessive force context is always met where a prison official maliciously and sadistically uses force to cause harm, whether or not significant injury is evident. *Hudson*, 503 U.S. at 9. If this was not true, the Eighth Amendment "would permit any physical punishment… inflicting less than some arbitrary quantity of injury." *Id.* The extent of injury suffered by an inmate is one factor that may

suggest whether the use of force was plausibly thought necessary, and more than a *de minimis* use of physical force is required. *Id.* at 7-10. However, an inmate does not "lose his ability to pursue an excessive force claim merely because he has the good fortune to escape without serious injury." *Wilkins v. Gaddy*, 559 U.S. 34, 38 (2010) (per curiam) (reversing lower courts' dismissal based on a finding that plaintiff's injury was *de minimis*).

The subjective requirement is met where the claimant shows that "officials used force maliciously and sadistically for the very purpose of causing harm." *Farmer*, 511 U.S. at 835. To determine whether the force was malicious and sadistic in an excessive force claim brought under the Eighth Amendment, the Court considers the five *Hudson* factors: "(1) the extent of injury suffered by an inmate; (2) the need for application of force; (3) the relationship between that need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of the forceful response." *Hughes v. Rodriguez*, 31 F.4th 1211, 1221 (9th Cir. 2022).[7]

Turning to the record, the Court finds that Defendants have not met their burden on summary judgment. Upon its review of the video of the cell extraction, the Court notes that Jackson's cell has a sealed pane over the window and the food flap appears to be obstructed by a red apparatus. (ECF No. 53-7 at 2:00-15.) Jackson's sworn Complaint alleges that he was unable to propel substances from his cell because there was a red box covering his food flap. (ECF No. 6 at 3.) A reasonable jury, viewing this evidence and drawing all inferences in the light most favorable to Jackson, could find that Jackson had not propelled and thus that Defendants employed force maliciously to harm Jackson, rather than in good-faith effort to maintain or restore discipline. *See Hudson*, 503 U.S. at 7.

---

[7]The Court notes that Defendants' Motion analyzes the *Kingsley* factors. *Kingsley v. Hendrickson,* 576 U.S. 389 (2015) concerns the Fourteenth Amendment rights of pretrial detainees, not the Eighth Amendment rights of inmates. The Court discusses the *Hudson* factors as in *Hughes*, 31 F.4th at 1221, but notes that many of the *Kingsley* and *Hudson* factors overlap, and the Ninth Circuit has held that "our cases do not distinguish among pretrial and post-conviction detainees for the purposes of excessive force." *Shorter v. Baca*, 895 F.3d 1176, 1182 n.4 (9th Cir. 2018).

The Court turns now to the *Hudson* factors. As to the extent of Jackson's injury, parties do not appear to dispute that Jackson's injuries are relatively modest. According to his medical record taken shortly after the incident, Jackson sustained epistaxis, hematoma above his left eyebrow, and early signs of bruising on his jaw. (ECF No. 53-9 at 2.) Jackson additionally alleges that the incident left him with two black eyes and that he has suffered from fear and sleeplessness that required treatment with medications. (ECF No. 6 at 3.) However, the lack of a significant injury is not a bar to Eighth Amendment claims, and the Court finds that the injuries Jackson has alleged are not *de minimis* for the purposes of his Eighth Amendment claim. *See Hudson*, 503 U.S. at 9. That Jackson's alleged injuries are moderate may limit his recoverable damages, but it is not a reason to dismiss his complaint at this stage. *See Wilkins*, 559 U.S. at 38.

As to the remaining *Hudson* factors—which address the proportionality of force to need and efforts to temper the severity of the response—Defendants' arguments hinge largely upon their assertion that Jackson was lying on his bed with his hands concealed under his body. For example, Defendants allege that "[b]ecause Jackson's hands were tucked under his body Officer Kirkland was unsure whether Jackson had a weapon on him that could be used to harm officers. As such, for the safety of the officers Officer Kirkland stunned Jackson with a taser until Jackson's hands were secured." (ECF No. 53 at 11.) Defendants provide evidence in the form of officer reports indicating that Jackson was lying down with his hands concealed. (ECF No. 53-8.) Jackson alleges that he was lying face down with his hands behind his back and was tased for no reason. (ECF Nos. 6 at 4; 56 at 2.) The video footage of Jackson's extraction does not show how Jackson was positioned when officers enter his cell, nor is Jackson's body clearly visible in the video. (ECF No. 53-7.) No sign of struggle is apparent. The video shows that within seconds of Defendants entering the cell, the taser is deployed. (*Id.* at 2:12-16.) The taser can be heard being deployed four times while Jackson screams. (*Id.* at 2:12-2:52.) Officers repeatedly instruct Jackson, "Give us your hands" to which Jackson repeatedly screams both "My hands are behind my back" and "You've got my hands." (*Id.* at 2:39-

10

2:54.) Defendants additionally argue that Jackson threatened officers after his extraction took place, and these threats verify that officers perceived a threat when entering Jackson's cell. (ECF No. 53 at 15.) The Court does not follow how statements Jackson made *after* he was extracted—post-strip search, from the inside of a locked and barred shower—is probative of how Defendants had perceived a threat from Jackson *prior* to his extraction.

Lastly, Defendants assert that prison administrators must be accorded deference in maintaining institutional security, *Bell v. Wolfish*, 441 U.S. 520, 527 (1979). Nonetheless, in evaluating a summary judgment motion, a court views all facts and draws all inferences in the light most favorable to the nonmoving party. *Kaiser Cement Corp.*, 793 F.2d at 1103. Viewing the evidence in the light most favorable to Jackson, the Court cannot find that Defendants have shown an absence of a dispute of material fact as to the objective and subjective components of Jackson's Eighth Amendment claim. Because a reasonable jury could find that Defendants used excessive force in violation of Jackson's Eighth Amendment rights while extracting him from his cell, the Court denies Defendants' Motion as to the excessive force claim.

### C. Qualified Immunity

Defendants argue that they are entitled to qualified immunity because they did not extract Jackson from his cell for any malicious purpose. (ECF No. 53 at 16.) They argue that because Jackson had propelled an unknown liquid on NDOC staff, he must be extracted so that his cell could be searched, and he did not submit to restraints. (*Id.*) Defendants argue that they did not violate establish clearly established law because all four *Kingsley* factors favor them. (*Id.*) Jackson counters that Defendants are not entitled to qualified immunity because Defendants violated clearly established law and his Eighth Amendment rights. (ECF No. 56 at 5.)

Qualified immunity is an "immunity from suit rather than a mere defense to liability." *Mitchell v. Forsyth*, 472 U.S. 511, 526 (1985). The doctrine of qualified immunity attempts to balance two important and sometimes competing interests: "the need to hold public

officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks and citation omitted). To determine whether qualified immunity applies, the Court must consider "(1) whether the official violated a constitutional right and (2) whether the constitutional right was clearly established." *C.B. v. City of Sonora*, 769 F.3d 1005, 1022 (9th Cir. 2014) (citing *Pearson* 555 U.S. at 232). District courts have discretion to address these prongs in any order. *Pearson*, 555 U.S. at 236.

Regarding the first prong, as discussed above, Defendants have not shown an absence of a dispute of material fact as to whether they used excessive physical force in violation of Jackson's Eighth Amendment rights.

Regarding the second prong, here too, Defendants have not met their burden on summary judgment. Defendants' argument that the force was reasonable under *Kingsley* is unavailing. (ECF No. 53 at 16.) For the second prong of a qualified immunity analysis, the proper inquiry is whether a reasonable official would have understood that his actions were violating Jackson's rights. *See Hope v. Pelzer*, 536 U.S. 730, 739 (2002). "A right is clearly established when it is 'sufficiently clear that every reasonable official would have understood that what he is doing violates that right.'" *Rivas-Villegas v. Cortesluna*, 595 U.S. 1, 5 (2021) (per curiam) (quoting *Mullenix v. Luna*, 577 U.S. 7, 11 (2015) (per curiam)). A reasonable jury could find that Defendants had falsely accused Jackson of propelling to beat him as he alleges. This would clearly violate a constitutional right because "[o]fficers have been on notice since at least 1992 that intentionally harming a prisoner without a permissible purpose violates the Eighth Amendment." *Rodriguez v. Cnty. of Los Angeles*, 96 F. Supp. 3d 990, 1002 (C.D. Cal. 2014), *aff'd*, 891 F.3d 776 (9th Cir. 2018) (citing *Hudson*, 503 U.S. at 6).

Viewing all evidence in the light most favorable to Jackson, the Court finds that Defendants are not entitled to qualified immunity because Defendants have not shown the absence of a dispute of material fact as to whether Defendants violated Jackson's

Eighth Amendment rights and whether Jackson's rights were clearly established at the time of violation.

### IV. CONCLUSION

The Court notes that the parties made several arguments and cited to several cases not discussed above. The Court has reviewed these arguments and cases and determines that they do not warrant discussion as they do not affect the outcome of the Motion before the Court.

It is therefore ordered that Judge Denney's report and recommendation (ECF No. 58) is rejected.

It is further ordered that Defendants' motion for summary judgment (ECF No. 53) is denied.

The Court refers this case to Judge Denney to conduct a settlement conference. The proposed joint pretrial order is due 30 days from the settlement conference.

DATED THIS 3rd Day of October 2025.

_____
MIRANDA M. DU
UNITED STATES DISTRICT JUDGE